IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SAMURAI GLOBAL, LLC, §
§
　　　　Plaintiff, §
§
VS. § Civil Action No. 3:20-CV-3718-D
§ (Consolidated with
LANDMARK AMERICAN § Civil Action No. 3:22-CV-2774-D)
INSURANCE COMPANY, §
§
　　　　Defendant. §

MEMORANDUM OPINION
AND ORDER

　　　　In these consolidated actions, plaintiff Samurai Global, LLC ("Samurai") sues its

insurer, defendant Landmark American Insurance Company ("Landmark"), alleging claims

for breach of an insurance contract and for violations of the Texas Insurance Code, Tex. Ins.

Code Ann. §§ 541.060, 541.061 (West 2023).  Landmark moves for summary judgment as

to Samurai's claims, and Samurai moves for partial summary judgment as to several of

Landmark's affirmative defenses.  For the reasons that follow, the court grants in part and

denies in part both motions.

I

　　　　This lawsuit arises from an insurance coverage dispute concerning Samurai's

commercial property, which comprises six buildings containing forty-two residential units

located in Dallas, Texas.[1]  The property was initially damaged by a tornado that hit Dallas

　　　　_____

　　　　[1]The court assumes the parties' familiarity with its prior memorandum opinions and
orders that recount some of the pertinent background facts and procedural history of this

on October 20, 2019 and then by vandalism, theft, and moisture in the months that followed.[2] Landmark insured the property under a commercial property policy (the "Policy") in which Samurai was the sole named insured.

On October 22, 2019, two days after the tornado, Samurai sent Landmark a notice of loss stating that the property had sustained tornado damage. Adjusters completed initial inspections of the damage, and Samurai later sent Landmark two sworn statements in proof of loss. The first proof of loss, sent on January 27, 2020, was for a $200,000 advance payment requested by the public adjuster retained by Samurai. The second, sent on April 23, 2020, was for $1,803,749.15, the undisputed actual cash value measurement net of the advance payment and a wind deductible. Landmark promptly paid both amounts.

On May 11, 2020, however, Samurai sent Landmark an additional, unsolicited sworn statement in proof of loss, indicating a total net amount claimed of $5,346,385.42. Landmark rejected this proof of loss because its independent adjuster had not yet reached an agreement with Samurai as to the scope or measurement of loss.

---

case. *See Samurai Glob., LLC v. Landmark Am. Ins. Co.*, 2023 WL 2190190 (N.D. Tex. Feb. 23, 2023) (Fitzwater, J.); *Samurai Glob., LLC v. Landmark Am. Ins. Co.*, 2023 WL 2232131 (N.D. Tex. Feb. 24, 2023) (Fitzwater, J.); *Samurai Glob., LLC v. Landmark Am. Ins. Co.*, 2023 WL 4089423 (N.D. Tex. June 20, 2023) (Fitzwater, J.); *Samurai Glob., LLC v. Landmark Am. Ins. Co.*, 2023 WL 8627527 (N.D. Tex. Dec. 13, 2023) (Fitzwater, J.).

[2]When both sides to a case move for summary judgment, the court recounts the evidence that is undisputed, and, when it is necessary to set out evidence that is contested, does so favorably to the side who is the summary judgment nonmovant in the context of that evidence. *See, e. g.*, *GoForIt Ent., LLC v. DigiMedia.com L.P.*, 750 F.Supp.2d 712, 718 n.4 (N.D. Tex. 2010) (Fitzwater, C.J.) (quoting *AMX Corp. v. Pilote Films*, 2007 WL 1695120, at *1 n.2 (N.D. Tex. June 5, 2007) (Fitzwater, J.)).

In an attempt to reach an agreement as to the scope or measurement of loss, the parties' representatives met to reinspect the property on July 6, 2020.  Landmark's representatives noted that vandalism and theft had occurred in several units on the property since the initial inspections.  Samurai's engineer acknowledged that the property had sustained additional structural and non-structural damage due to prolonged vandalism and moisture intrusion that had occurred since the tornado, and also acknowledged that the additional damage could have been largely prevented with adequate security and moisture mitigation measures directly following the tornado.  Around this time, Landmark also allegedly learned that the City of Dallas had sent Samurai a letter on June 10, 2020 setting out numerous violations of the Dallas City Code and Dallas Fire Code as a result of Samurai's failure to maintain the property in a safe and sanitary condition.

On August 3, 2022 Samurai sent Landmark a proof of loss related to the vandalism and theft damage.  By this date, all six buildings on the property had been demolished.  Landmark initiated an investigation.

Samurai filed two state-court lawsuits in connection with these events, both of which Landmark removed to this court.  The first lawsuit, filed on November 20, 2020, asserted causes of action concerning Samurai's tornado-related insurance claim.  The second lawsuit, filed on September 12, 2022, asserted causes of action concerning Samurai's vandalism and theft-related insurance claim.  The court consolidated the two cases on January 4, 2024.

Landmark now moves for summary judgment as to Samurai's claims, and Samurai

moves for partial summary judgment as to several of Landmark's affirmative defenses.[3]  The court is deciding the motions on the briefs, without oral argument.

## II

When a party moves for summary judgment on a claim on which the opposing party will bear the burden of proof at trial, the moving party can meet its summary judgment obligation by pointing the court to the absence of admissible evidence to support the nonmovant's claim.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  Once the moving party does so, the nonmovant must go beyond its pleadings and designate specific facts showing there is a genuine issue for trial.  *See id.* at 324; *Little v. Liquid Air Corp*., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  The nonmovant's failure to produce proof as to any essential element of a claim renders all other facts immaterial.  *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.).  Summary judgment is mandatory if the nonmovant fails to meet this burden.  *Little*, 37 F.3d at 1076.

When the summary judgment movant will have the burden of proof on a claim or

---

[3]Landmark moves for leave to file a surreply in opposition to Samurai's motion for partial summary judgment, contending that Samurai is attempting to improperly introduce new evidence in its reply brief.  Because the court is not considering the evidence that Landmark challenges, it denies Landmark's motion for leave to file a surreply without prejudice as moot.

defense, however, the movant "must establish 'beyond peradventure all of the essential elements of the claim or defense.'" *Bank One, Tex., N.A. v. Prudential Ins. Co. of Am.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that the movant must demonstrate that there are no genuine and material fact disputes and that the movant is entitled to judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). "The court has noted that the 'beyond peradventure' standard is 'heavy.'" *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.) (quoting *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007) (Fitzwater, J.)).

III

Landmark moves for summary judgment as to all three of Samurai's remaining claims: (1) breach of contract; (2) violation of Chapter 541 of the Texas Insurance Code; and (3) violation of Chapter 542 of the Texas Insurance Code. The court will first address Samurai's breach of contract claim in § III and then address Samurai's Texas Insurance Code claims in § IV.

A

Samurai alleges that Landmark breached the Policy when it declined to pay the additional funds requested in the third proof of loss. Landmark contends that it is entitled to summary judgment dismissing Samurai's breach of contract claim because Samurai cannot prove all the elements of this claim. "The elements of a breach of contract action under

Texas law are: '(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Certain Underwriters at Lloyd's of London v. Lowen Valley View, LLC*, 892 F.3d 167, 170 (5th Cir. 2018) (citations omitted).

B

Landmark contends that Samurai cannot prove the existence of a valid contract that covers the entire property because Samurai cannot show that it has an insurable interest[4] in thirty-three of the units on the property, such that it could recover more than the amount it has already received from Landmark.[5]

1

In Texas, "[a] party must have an insurable interest in the insured property to recover under an insurance policy." *Johnson v. Safeco Ins. Co. of Ind.*, 240 F.Supp.3d 555, 561 (N.D. Tex. 2017) (Boyle, J.) (quoting *Jones v. Tex. Pac. Indem. Co.*, 853 S.W.2d 791, 794

---

[4]Landmark appears to treat as separate issues whether Samurai has an "insurable interest" in the property and whether Samurai has a "financial interest" in the property. But the terms "insurable interest" and "financial interest" are basically interchangeable. *See, e.g.*, *Gonzalez v. Atl. Cas. Ins. Co.*, 542 F.Supp.2d 601, 603-04 (W.D. Tex. 2008) (using the terms interchangeably). The court will therefore combine its analysis of these issues, and, for convenience, will use the term "insurable interest" to refer to both.

[5]Samurai appears to treat the issue of insurable interest as an affirmative defense on which Landmark bears the burden of proof. But as one court has noted, this issue actually falls under "the first *prima facie* element [of the breach of contract claim]—the existence of a valid contract—because without an insurable interest, [an insurance] Policy is void as a matter of law." *Liberty Corp. Cap. Ltd. v. Club Exclusive, Inc.*, 2018 WL 3574931, at *14 (N.D. Ala. July 25, 2018). Accordingly, the court will include this issue in its discussion of the case-in-chief and place the burden of proof on Samurai.

(Tex. App. 1993, no writ)).  "A claimant has the burden to prove an insurable interest, which is a question of law." *Id.* (quoting *Rhine v. Priority One Ins. Co.*, 411 S.W.3d 651, 660 (Tex. App. 2013, no pet.)).  "An insurable interest exists when the assured derives pecuniary benefit or advantage by the preservation and continued existence of the property or would sustain pecuniary loss from its destruction." *Id.* (quoting *Rhine*, 411 S.W.3d at 660) (internal quotation marks omitted).

> An insurable interest in property does not necessarily imply a property interest in, or a lien upon, or possession of, the subject matter of the insurance, and neither the title nor a beneficial interest is requisite to the existence of such an interest; it is sufficient that the insured is so situated with reference to the property that he would be liable to loss should it be injured or destroyed by the peril against which it is insured.

*Smith v. Eagle Star Ins. Co.*, 370 S.W.2d 448, 450 (Tex. 1963) (quoting 29 Am. Jur. *Insurance* § 438 (1963)).

One court has held that "merely receiving a fee *for purchasing insurance for the property owners* . . . does not amount to an insurable interest in the property under Texas law." *ARM Props. Mgmt. Grp. v. RSUI Indem. Co.*, 642 F.Supp.2d 592, 611 (W.D. Tex. 2009) (emphasis added), *rev'd on other grounds*, 400 Fed. Appx. 938 (5th Cir. 2010).  But so far as this court is aware, no court has specifically addressed whether, under Texas law, a property management company has an insurable interest in property that it manages.[6]

---

[6]One federal court has stated that, under Florida law, a management company could have an insurable interest in properties that it manages under certain circumstances, "due to its ongoing management contracts with the properties." *Banta Props., Inc. v. Arch Specialty Ins. Co.*, 2012 WL 12835880, at *1 (S.D. Fla. Jan. 26, 2012).

2

The summary judgment record indicates that, at the time the Policy was issued and at the time of the losses, Samurai owned nine of the forty-two units on the property (the "owned units") and managed and rented out the remaining thirty-three units (the "managed units") on behalf of those units' investor-owners.  In its response to Landmark's motion, Samurai maintains that it has an insurable interest in all forty-two units on the property—not just the owned units—because it derived pecuniary benefit from the entire property's preservation and sustained pecuniary loss from the damage to it.  Samurai points to deposition testimony indicating that it received management fees from the investor-owners of the managed units and that, after the tenants were forced to vacate those units following the tornado, Samurai was unable to continue collecting the fees.  Samurai also offers evidence that, after the tenants vacated the managed units and Samurai ceased to collect rent from them, it was nonetheless forced to pay guaranteed rent to the investor-owners.  Samurai has also presented evidence that, after the tornado, it expended over $400,000 to mitigate damages to *all* units—not just the nine owned units.

The court holds that Samurai has satisfied its burden to go beyond its pleadings and present evidence that would enable a reasonable jury to find that Samurai had an insurable interest in all forty-two units on the property, entitling Samurai to an additional payout from Landmark.  Although Landmark challenges the sufficiency of this evidence, the proof is adequate to enable a reasonable jury to find in Samurai's favor on the element of insurable interest.  Consequently, Landmark is not entitled to summary judgment dismissing Samurai's

breach of contract claim on this basis.

## C

Landmark maintains that Samurai has no evidence to support the third element of its claim—that Landmark breached the contract—because it cannot prove that the post-tornado losses due to vandalism, theft, and moisture are covered under the Policy.

## 1

"[F]or an insurance company to be liable for a breach of its duty to satisfy a claim presented by its insured, the insured must prove that its claim falls within the insuring agreement of the policy." *Data Specialties, Inc. v. Transcon. Ins. Co.*, 125 F.3d 909, 911 (5th Cir. 1997); *Fiess v. State Farm Lloyds*, 392 F.3d 802, 807 (5th Cir. 2004) (citations omitted). If the insurer produces evidence that the loss is excluded from the policy's coverage, the burden shifts to the insured to establish that there is an exception to the exclusion. *Fiess*, 392 F.3d at 807.

## 2

As a threshold matter, the parties dispute whether the damage to Samurai's property as a result of (1) the tornado and (2) the vandalism, theft, and moisture constitute a single combined loss event or multiple separate loss events. The Policy answers this question: it provides that an "occurrence" of loss or damage means "any one loss, disaster, casualty or series of losses, disasters, or casualties arising from one event," and further specifies:

> When the term "occurrence" applies to a loss or series of losses from the perils of tornado, cyclone, named storm, hurricane, windstorm, hail, flood, earthquake, volcanic eruption, riot, riot attending a strike, civil commotion and vandalism and malicious mischief, one event shall be construed to be all losses arising during a continuous period of 72 hours.

D. App. (ECF No. 94) at 22.  Under these definitions, the tornado damage constitutes a separate occurrence from any of the post-tornado damage from vandalism, theft, and water because the subsequent damage did not occur within 72 hours of the tornado.  The court therefore treats the tornado damage as a separate loss event from the other post-tornado damage when evaluating this claim.

3

Landmark contends that the damage from vandalism, theft, and moisture is not covered by the Policy.[7]  It points to the Policy's vacancy provision, which states that losses caused, *inter alia*, by vandalism, theft, and moisture are excluded from coverage if they occur when the property has been vacant for more than 60 consecutive days.  And Landmark cites deposition testimony indicating that the property was unoccupied by October 30, 2019 but that the losses from vandalism and theft likely began at least 60 days later, in January 2020 or after.

---

[7]In addition to discussing this issue in its response to Landmark's motion, Samurai raises the issue in its own motion, treating it as an affirmative defense on which Landmark bears the burden of proof.  But the question whether specific losses are covered by an insurance policy is actually part of the third *prima facie* element of the breach of contract claim, with the burden of proof allocated as set out *supra* at § III(C)(1).  The court therefore includes this issue in its discussion of the case-in-chief.

Samurai responds by citing this exception to the Policy's vacancy provision: "[b]uildings under construction or renovation are not considered vacant." P. Br. (ECF No. 97) at 22; D. App. (ECF No. 94) at 44. Samurai maintains that, in light of this provision, the property was not "vacant" at the time the post-tornado losses occurred, because the property was undergoing tornado-related "temporary repairs and mitigation." D. App. (ECF No. 95) at 94. Samurai contends that the only reason this "construction and renovation" ceased was because it had exhausted the funds that Landmark provided. Samurai posits that the Policy does not define the phrase "under construction or renovation," meaning that it is a matter of interpretation whether post-tornado "temporary repairs and mitigation" actually constitute "construction or renovation" and whether the property actually continued to be "under construction or renovation" at the time the vandalism, theft, and moisture damage occurred.

Each party has presented evidence that would enable a reasonable jury to find in its favor on the question whether the losses from vandalism, theft, and moisture were covered under the Policy, including whether the Policy's vacancy provision applied. The court therefore holds that neither party is entitled to summary judgment on this basis on Samurai's breach of contract claim.

## D

Alternatively, Landmark contends that, even if some of Samurai's losses are covered, Samurai cannot prove its claims under the Policy because it has not met its burden under the doctrine of concurrent causes to segregate covered losses from non-covered losses. Samurai maintains that the doctrine of concurrent causes is inapposite. Landmark and Samurai both

-11-

move for summary judgment on this issue.

1

When a loss is caused at least in part by a non-covered peril, the doctrine of concurrent causes may apply. The doctrine applies only when "covered and non-covered perils combine to create a loss," *Fiess*, 392 F.3d at 807—in other words, when "the two causes cannot be separated," *Utica Nat. Ins. Co. of Tex. v. Am. Indem. Co.*, 141 S.W.3d 198, 204 (Tex. 2004). It does not apply when the loss "is caused by a covered peril and an excluded peril that are *independent* causes of the loss." *Guar. Nat'l Ins. Co. v. N. River Ins. Co.*, 909 F.2d 133, 137 (5th Cir. 1990) (emphasis added).

Because an insured can only recover damages caused by covered perils, *see Fiess*, 392 F.3d at 807, when the doctrine of concurrent causes applies, "the insured bears the burden of presenting evidence that will allow the trier of fact to segregate covered losses from non-covered losses." *Id.* (citation omitted). "The burden of allocation remains with the insured party, even if the allocation is being made between covered perils and *excluded* perils, perils the type of which the insurer normally has the burden of proving." *Nat'l Union Fire Ins. of Pitt. v. Puget Plastics Corp.*, 735 F.Supp.2d 650, 669 n.23 (S.D. Tex. 2010) (emphasis in original), *aff'd*, 454 Fed. Appx. 291 (5th Cir. 2011). Even if some of the losses are covered, summary judgment for the insurer is appropriate unless the insured raises a genuine fact issue with respect to the amount of the loss attributable to the covered peril. *See Fiess*, 392 F.3d at 807.

-12-

2

Landmark maintains that the doctrine of concurrent causes applies because, even if portions of Samurai's losses were caused by covered perils, other parts of the losses were caused by non-covered perils. Landmark therefore contends that it is entitled to summary judgment on all of Samurai's claims under the Policy, because Samurai has failed to present evidence that would enable a reasonable jury to segregate the portions of its losses caused by covered perils from those caused by non-covered perils.

Samurai posits that the doctrine of concurrent causes is inapplicable because Landmark has produced no evidence (1) that a non-covered peril caused any of Samurai's losses, or, (2) even if a non-covered peril caused some losses, that the non-covered peril combined with a covered peril to cause Samurai's loss.

3

The court has already determined that there is a genuine issue of material fact bearing on whether Samurai's vandalism, theft, and moisture losses are covered under the Policy. *See supra* at § III(C)(3). Because this fact issue affects whether the doctrine of concurrent causes applies in this case, neither party is entitled to summary judgment on this question, and the court denies each party's motion to the extent addressed to the concurrent cause issue.

E

Landmark maintains that it is entitled to summary judgment because Samurai lacks evidence that Landmark breached the Policy by failing to provide "ordinance or law"

coverage—i.e., failing to pay any costs that Samurai incurred in order to comply with a new ordinance or law regulating construction, repair, or zoning when rebuilding after the tornado.

The Policy provides that, if Samurai's property is damaged, Landmark "will pay the increased costs incurred to comply with the minimum standards of an ordinance or law in the course of repair, rebuilding or replacement of damaged parts of that property." D. App. (ECF No. 94) at 37. But Landmark points to two crucial limitations that the Policy imposes on this provision: that Landmark need not pay for the increased cost of construction (1) "[u]ntil the property is actually repaired or replaced," and (2) "[u]nless the repair or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years." *Id.* Landmark also relies on Samurai's interrogatory responses as undisputed evidence that more than two years have passed since the tornado loss and that Samurai did not repair the claimed damage within that time.

Samurai has not responded to Landmark's evidence and argument. Because Samurai has failed to satisfy its burden to designate specific facts showing a genuine issue for trial, the court grants Landmark's summary judgment motion to the extent of holding that Samurai cannot recover for breach of contract based on Landmark's alleged failure to provide "ordinance or law" coverage under the Policy.

F

Landmark contends that Samurai has no evidence that Landmark breached the Policy by failing to provide replacement cost coverage (i.e., coverage for the cost of replacement or repair of the covered property, without deduction for physical deterioration and

-14-

depreciation), as opposed to merely paying out actual cash value (i.e., coverage for repair or replacement costs less depreciation).

1

Under the Policy's terms, Landmark need not provide replacement cost coverage (1) "[u]ntil the lost or damaged property is actually repaired or replaced," and (2) "[u]nless the repair or replacement is made as soon as reasonably possible after the loss or damage." D. App. (ECF No. 94) at 47.   Landmark cites Samurai's interrogatory response acknowledging that "[i]t is undisputed that [Samurai] did not 'repair' the property in this case"—that it only "mitigate[d] further damage and ultimately demolish[ed] the buildings." D. Br. (ECF No. 93) at 40; D. App. (ECF No. 95) at 94.  Landmark therefore asserts that it did not breach the Policy by failing to provide replacement cost coverage.

Samurai responds that the doctrine of prevention nonetheless allows it to pursue a breach of contract claim based on Landmark's failure to provide replacement cost coverage. Under this doctrine, "when a promisor wrongfully prevents a condition from occurring[,] that condition is excused."   *Mendoza v. COMSAT Corp.*, 201 F.3d 626, 631 (5th Cir. 2000). Samurai contends that Landmark wrongfully prevented it from repairing the property soon after the tornado loss by failing to designate the majority of the damage as covered under the Policy and therefore refusing to pay for the loss, meaning that Samurai lacked funding to repair the property.

2

The court holds that Landmark is entitled to summary judgment dismissing Samurai's

breach of contract claim to the extent it is based on Landmark's failure to provide replacement cost coverage. "[I]n cases where the [prevention] doctrine has been applied to allow an insured to recover replacement costs, the insurer either completely denied the claim or refused to make any payments until it was too late for the insured, who was frequently an unsophisticated party, to make repairs." *Devonshire Real Est. & Asset Mgmt., LP v. Am. Ins. Co.*, 2014 WL 4796967, at *7 (N.D. Tex. Sept. 26, 2014) (Boyle, J.) (collecting cases). "By contrast, courts have refused to extend the doctrine where the insurer already paid the insured actual cash value or where the dispute took place in a commercial setting and involved relatively sophisticated parties." *Id.* (collecting cases).

Here, both Landmark and Samurai are relatively sophisticated parties, and the dispute is a commercial one. Landmark promptly paid Samurai around $2 million with which to make repairs. "In the absence of Texas authority, such equities do not merit extending the [prevention] doctrine to relieve [Samurai] of its contractual obligation to make repairs before receiving replacement costs." *Id.* In light of this case law, a reasonable jury could not find in Landmark's favor on this issue based on the summary judgment evidence. The court therefore grants summary judgment dismissing Samurai's breach of contract claim to the extent it is based on Landmark's failure to provide replacement cost coverage.

G

In sum, the court dismisses Samurai's breach of contract claim to the extent it is based on Landmark's failure to provide "ordinance or law" or replacement cost coverage under the Policy. The court otherwise denies Landmark summary judgment motion to the extent it

-16-

seeks dismissal of Samurai's breach of contract claim as a whole.

IV

The court now considers Landmark's motion as it pertains to Samurai's claims under the Texas Insurance Code, on which Samurai will bear the burden of proof at trial.

A

"To recover under Chapter 541 of the Texas Insurance Code, a party must establish that: (1) 'the insurer committed one or more of the acts prohibited by Chapter 541'; and (2) those 'acts resulted in actual damages to the insured independent of the underlying claim.'" *Johnson*, 240 F.Supp.3d at 567 (quoting *Hulcher Servs., Inc. v. Great Am. Ins. Co.*, 2015 WL 3921903, at *11 (E.D. Tex. June 25, 2015)); *see Parkans Int'l LLC v. Zurich Ins. Co.*, 299 F.3d 514, 519 (5th Cir. 2002) (citation omitted) ("There can be no recovery for extra-contractual damages for mishandling claims unless the complained of actions or omissions caused injury independent of those that would have resulted from a wrongful denial of policy benefits.").

"To maintain a claim under Chapter 542 of the Texas Insurance Code, a party must show: (1) 'a "first-party" claim under an insurance policy'; (2) 'the insurer's liability for that claim'; and (3) 'the insurer's failure to follow one or more sections of the statute with respect to handling that claim.'" *Johnson*, 240 F.Supp.3d at 568 (quoting *Hulcher Servs.*, 2015 WL 3921903, at *11); *see also Weiser-Brown Op. Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 518 (5th Cir. 2015). "In other words, liability for the claim is a precondition to liability under Chapter 542." *Johnson*, 240 F.Supp.3d at 568 (citing *Wellisch v. United Servs. Auto.*

-17-

*Ass'n*, 75 S.W.3d 53, 57 n.2 (Tex. App. 2002, pet. denied)).

"[A]n insured cannot recover policy benefits for an insurer's statutory violation if the insured does not have a right to those benefits under the policy." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 490 (Tex. 2018). In other words, extracontractual claims like those in the Texas Insurance Code are "predicated on [the] insurance policy and the [damage] being covered under the insurance policy," and there "can be no liability [under the Code] if the insurance claim is not covered by the policy." *Progressive Cnty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005) (per curiam) (citation omitted). Accordingly, when "the insurer 'did not breach the insurance contract, no basis supports' the insured's recovery of 'punitive and extra-contractual damages.'" *Menchaca*, 545 S.W.3d at 491 (quoting *Chrysler Ins. Co. v. Greenspoint Dodge of Hous., Inc.*, 297 S.W.3d 248, 253-54 (Tex. 2009) (per curiam)).

## B

Landmark contends that Samurai cannot recover on its Texas Insurance Code claims because it cannot prove its breach of contract claim. Although Samurai does not specifically respond to this assertion, it maintains throughout its response, and has designated specific facts showing, that there are genuine issues of material fact for trial as to its breach of contract claim. The court agrees that there are genuine and material fact issues that preclude summary judgment.[8] Accordingly, the court denies Landmark's motion to the extent it is

---

[8]"When this court denies rather than grants summary judgment, it typically does not set out in detail the evidence that creates a genuine issue of material fact." *Valcho v. Dall.*

addressed to Samurai's Texas Insurance Code claims.

V

The court now turns to the parts of the parties' motions that support or oppose summary judgment on Landmark's affirmative defenses, on which Landmark will bear the burden of proof at trial.

The court first considers Landmark's affirmative defense that it can avoid liability on Samurai's claims by reason of Samurai's misrepresentations.[9]

A

To avoid liability for breaching an insurance policy based on the insured's misrepresentation, an insurer must prove: "(1) the making of the representation; (2) falsity of the representation; (3) reliance by the insurer; (4) the intent to deceive on the part of the insured in making the same; and (5) the materiality of the representation." *Am. Nat'l Ins. Co. v. Arce*, 672 S.W.3d 347, 354 (Tex. 2023) (citations omitted).  "[I]f the answers to the

_____

*Cnty. Hosp. Dist.*, 658 F.Supp.2d 802, 812 n.8 (N.D. Tex. 2009) (Fitzwater, C.J.) (citing *Swicegood v. Med. Protective Co.*, 2003 WL 22234928, at *17 n.25 (N.D. Tex. Sept. 19, 2003) (Fitzwater, J.)).

[9]The parties' treatment of Samurai's misrepresentations at times conflates multiple issues.  There are actually three separate misrepresentation-related issues asserted in this case: (1) whether Samurai's misrepresentations allow Landmark to avoid liability for breach of contract and violation of the Texas Insurance Code; (2) whether Samurai's misrepresentations are grounds for voiding the Policy under the Policy's explicit terms; and (3) whether Samurai's misrepresentations are grounds for rescission of the Policy.  To the extent possible, this memorandum opinion and order separates the parties' arguments as to each of these three issues.  Section V addresses the first of the issues; the remaining issues are addressed in subsequent sections.

-19-

questions in [an insurance] application were untrue at the time they were given, the untrue answers constitute misrepresentations." *Mayes v. Mass. Mut. Life Ins. Co.*, 608 S.W.2d 612, 616 (Tex. 1980).   "Reliance is established when the insurer does not know the representations are false." *United of Omaha Life Ins. Co. v. Halsell*, 2010 WL 376428, at *4-5 (W.D. Tex. Jan. 25, 2010) (citation omitted).   A representation is material if it "actually induces the insurance company to assume the risk." *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021) (citation omitted).

Additionally, "[s]tatutory notice is an essential element of a defense based on misrepresentation or rescission." *Myers v. Mega Life & Health Ins. Co.*, 2008 WL 1758640, at *3 (Tex. App. 2008, pet. denied) (citing *Womack v. Allstate Ins. Co.*, 296 S.W.2d 233, 235-36 (Tex. 1956); *Koral Indus., Inc. v. Sec.-Conn. Life Ins. Co.*, 788 S.W.2d 136, 148 (Tex. App. 1990), *aff'd*, 802 S.W.2d 650 (Tex. 1990) (per curiam)).   A defendant-insurer can raise a misrepresentation defense only if it can show "that before the 91st day after the date the defendant discovered the falsity of the representation, the defendant gave notice that the defendant refused to be bound by the policy[.]"   Tex. Ins. Code Ann. § 705.005(b) (West 2023).

B

Landmark contends that it cannot be held liable for breach of contract for failing to provide additional coverage under the Policy because Samurai made misrepresentations and concealed information.   Landmark and Samurai both move for summary judgment on this

-20-

defense, on which Landmark will bear the burden of proof at trial.[10]

1

Landmark relies on evidence that Samurai made untrue representations in its insurance application when it checked a box indicating that it was the "Owner" of the property and described the property as a "multi-family apartment building." D. App. (ECF No. 94) at 82. Landmark also offers proof that, after the tornado, Samurai continued to represent in multiple sworn statements in proof of loss that it was the "Owner" of the property. Landmark maintains that these representations contradict other, undisputed evidence that Samurai owned only nine units on the property and that the property was actually a mix of apartments and condominiums. In particular, Landmark cites a Samurai representative's deposition testimony that the property "*was* an apartment building" and then was "converted to condos," D. App. (ECF No. 95) at 298-99, 1387 (emphasis added), as well as the fact that, when Samurai sold the managed units to their investor-owners, it used contracts entitled "Residential Condominium Contracts," *id.* at 2953.

Samurai, for its part, points to the deposition testimony of a Landmark corporate representative who admitted that Landmark had never uncovered facts "that would lead

---

[10]Although Landmark states in its motion that it is moving for summary judgment only as to Samurai's claims—not as to its own affirmative defenses—it includes in the motion arguments related to Samurai's alleged misrepresentations. Landmark's contention that it can avoid liability on Samurai's claims on the basis of Samurai's misrepresentations, however, is an affirmative defense on which Landmark will bear the burden of proof at trial. The court therefore addresses this issue when considering Landmark's affirmative defenses and analyzes whether the parties have met their summary judgment burdens accordingly.

-21-

[Landmark] to believe or that would form the basis that [Samurai] formed [the] property in a condominium association" and that "Landmark does not contend [that Samurai's] property is formed in a condominium association." P. App. (ECF No. 98) at 34-35. Samurai also cites the Texas Uniform Condominium Act's definition of "condominium," which states that real property "is a condominium only if one or more of the common elements are directly owned in undivided interests by the unit owners" and "is not a condominium if all of the common elements are owned by a legal entity separate from the unit owners, such as a corporation." Tex. Unif. Condominium Act Ann. § 82.003(8) (West 2017); P. Br. (ECF No. 90) at 20. Samurai compares this definition to the governing document for the property's homeowner association, which it maintains indicates that the common elements at Samurai's property were owned by Samurai, not by the common owners of the managed units.

2

As to the third element of the affirmative defense, Landmark cites evidence that it relied on Samurai's misrepresentations. First, it points to the deposition testimony of the underwriter who issued the Policy, who confirmed that Landmark was not aware of the true ownership structure of the property and that Landmark would not have issued the Policy or any payments pursuant to the Policy had it been made aware of Samurai's misrepresentations. Landmark also points to evidence that, when it writes an insurance policy for condominiums, it underwrites the policy as a condominium association, names the condominium association as the insured, and uses a different policy form than the one it used for the Samurai Policy. Landmark asserts that the fact that it did not do these things means

that it was not aware of Samurai's misrepresentations.

3

Concerning the fourth element of the defense, Landmark cites evidence that it maintains shows that Samurai intended to deceive Landmark when making the misrepresentations. In particular, Landmark points to emails in which a Samurai representative discussed with Samurai's insurance agent how to structure the insurance on the property. In those emails, the Samurai representative proposed having Samurai, as opposed to individual future unit owners, "be the policy holder" and "pay the insurance as a whole," to avoid "needlessly having each individual buyer having individual contracts with the insurance company" and to avoid "Samurai Global [having to] pay 1 day's worth of the insurance fee [and] [t]hen the [] buyer [] once again hav[ing] to sign a new insurance contract." P. Supp. Resp. (ECF No. 53-4) at 1. The representative indicated that he thought "the premium would be lower" if the Policy were structured this way. *Id.*

4

Concerning the fifth element of the defense, Landmark cites evidence that Samurai's misrepresentations were material. It points to uncontested proof that, upon receipt of Samurai's first two sworn statements in proof of loss, Landmark issued payments to Samurai of $200,000 and $1,803,749.15.

5

As to the statutory notice component of the defense, Landmark cites evidence that it maintains satisfies this requirement. Landmark first points to the transcript of the October

19, 2022 deposition of Samurai's corporate representative as proof that it first uncovered the true ownership structure of the property on that date. It then cites its motion for leave to amend its answer, which it filed on December 13, 2022—fewer than 91 days after the date of that deposition—as evidence that it gave notice within the appropriate timeframe.

Samurai responds that Landmark's statement in its motion for leave to amend its answer does not meet the statutory notice requirement, because even if the motion did provide Samurai with notice, that notice came too late to satisfy the requirement. Samurai bases this argument on evidence allegedly showing that Landmark discovered the falsity of Samurai's representations far earlier than October 19, 2022: (1) an expert report dated January 14, 2022, which allegedly details the fact that Samurai did not own all units on the property; and (2) the deposition testimony of Landmark's corporate representative concerning a February 14, 2022 expert report, in which the representative admitted that "as of February 14th, 2022," Landmark's attorney's knew "that Samurai Global, LLC, did not own all of the units at the property." P. Br. (ECF No. 90) at 25-26; P. App. (ECF No. 91) at 21. Because February 2022 was far longer than 91 days before Landmark filed its motion for leave to amend its answer, Samurai asserts that Landmark did not provide notice within the statutory period and therefore did not satisfy the statutory notice requirement.[11]

---

[11]Samurai cites additional evidence in support of its statutory notice argument, but because this evidence was raised for the first time in Samurai's reply brief and cites a reply appendix filed in support of that reply brief, the court will not consider it. *See Budri v. FirstFleet, Inc.*, 2020 WL 10816627, at *2 (N.D. Tex. June 10, 2020) (Ramirez, J.) (citations omitted) (a movant is not "ordinarily permitted to introduce new evidence in support of a reply because such action would deprive the non-movant of a meaningful opportunity to

In response to Samurai's evidence, Landmark asserts that, even if it did learn of Samurai's mere partial ownership interest by February 2022, it only discovered Samurai's misrepresentations regarding whether the units were apartments or condominiums in October 2022—meaning that the notice it provided in its motion for leave to amend its answer was nonetheless timely.

The court holds that both parties' arguments as to the timing of Landmark's knowledge relative to the filing of its motion for leave to amend are misplaced, because the motion in question did not actually provide the requisite notice.  As stated above, to be entitled to raise a misrepresentation defense, a defendant must specifically give notice that it "*refused to be bound* by the policy."  Tex. Ins. Code Ann. § 705.005(b) (emphasis added). Landmark's motion for leave to amend its answer asked the court for leave to assert new claims and defenses against Samurai in light of the alleged misrepresentations it had discovered.  The motion nowhere explicitly asserted that Landmark refused to be bound by the Policy.  Furthermore, the first amended complaint that Landmark filed pursuant to its motion for leave to amend only asserted one misrepresentation-related defense: that, under the Policy's explicit terms, the Policy was void due to Samurai's misrepresentations.

---

respond"); *Dethrow v. Parkland Health Hosp. Sys.*, 204 F.R.D. 102, 103-04 (N.D. Tex. 2001) (Fitzwater, J.) (holding that a reply appendix cannot be filed without leave of court). "[W]here a movant has injected new evidentiary materials in a reply without affording the nonmovant an opportunity for further response, the court still retains the discretion to decline to consider them."  *Springs Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 240 (N.D. Tex. 1991) (Fitzwater, J.); *see Black Cat Expl. & Prod., LLC v. MWW Cap. Ltd.*, 2015 WL 12731751, at *3 (N.D. Tex. Apr. 29, 2015) (Frost, J.).

Nowhere in that defense did Landmark assert that it refused to be bound by the Policy or its terms. The first time Landmark actually indicated that it refused to be bound by the Policy on account of Samurai's alleged misrepresentations was in its second amended answer, filed on March 24, 2023, in which it asserted a counterclaim for rescission of the Policy. This date is outside the 91-day window for Landmark to provide statutory notice, even if its discovery of the alleged misrepresentations was as late as October 2022.

In light of this evidence, a reasonable jury could not find that Landmark provided the requisite statutory notice for it to be allowed to raise a misrepresentation defense.

6

To meet its summary judgment burden as to the misrepresentation defense, Samurai must point the court to the absence of admissible evidence to support the defense. *See Celotex Corp.*, 477 U.S. at 325. To defeat Samurai's motion, Landmark must then go beyond its pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *See id.* at 324. For Landmark to obtain summary judgment establishing this defense in its favor, it must meet the heavy burden of demonstrating "beyond peradventure all of the essential elements of the . . . defense." *Bank One. Tex.*, 878 F. Supp. at 962 (quoting *Fontenot*, 780 F.2d at 1194).

Samurai has clearly met its burden to point to the absence of summary judgment evidence to support this defense, and Landmark has failed to satisfy its corresponding burden to introduce evidence that would enable a reasonable jury to find in its favor. Although Landmark has introduced sufficient evidence for a reasonable jury to find in its favor as to

all other elements of the defense, its proof as to statutory notice is insufficient.   And Landmark is not entitled to summary judgment establishing this affirmative defense in its favor because it has not satisfied the heavy "beyond peradventure" standard as to all elements of the defense.   Accordingly, the court grants summary judgment in favor of Samurai dismissing Landmark's misrepresentation affirmative defense.

## VI

Landmark maintains as a defense that Samurai's alleged misrepresentations and concealment of information void the Policy because the Policy expressly provides that certain material misrepresentations will void it.[12]   Landmark and Samurai both move for summary judgment on this defense, for which Landmark will bear the burden of proof at trial.[13]

---

[12]As noted *supra* at § V n.8, Landmark's allegation that Samurai's misrepresentations void the Policy is a separate affirmative defense from the assertion that Samurai's misrepresentations preclude Landmark from being held liable for breach of contract or violating the Texas Insurance Code.   *See Schlumberger Tech. Corp. v. Coil Tubing Sols., LLC*, 103 F.Supp.3d 846, 853 (S.D. Tex. 2015) (citing *950 Corbindale, L.P. v. Kotts Cap. Holdings Ltd. P'ship*, 316 S.W.3d 191, 196 (Tex. App. 2010, pet. denied); *Parks v. Devs. Sur. & Indem. Co.*, 302 S.W.3d 920, 923-24 (Tex. App. 2010, no pet.)) ("Under Texas law, whether a contract is void or unenforceable in response to a breach of contract claim is an affirmative defense.").

[13]Although Landmark states in its motion that it is moving for summary judgment only as to Samurai's claims—not as to its own affirmative defenses—it includes arguments related to Samurai's misrepresentations in the motion.   Landmark's contention that it can avoid liability on Samurai's claims on the basis of Samurai's misrepresentations is, however, an affirmative defense on which Landmark will bear the burden of proof at trial.   The court therefore addresses this issue when deciding Landmark's affirmative defenses and analyzes whether the parties have met their summary judgment burdens accordingly.

A

As relevant to this defense, the Policy states:

> This Coverage Part is void in any case of fraud by [Samurai] as it relates to this Coverage Part at any time. It is also void if [Samurai] or any other insured, at any time, intentionally conceal[s] or misrepresent[s] a material fact concerning:
> 1. This Coverage Part;
> 2. The Covered Property;
> 3. [Samurai's] interest in the Covered Property; or
> 4. A claim under this Coverage Part.

D. App. (ECF No. 95) at 58.

When interpreting an insurance policy, courts apply the general rules of contract construction to ascertain the parties' intent. *Gilbert Tex. Constr., LP v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010). A court's primary goal is to give effect to the parties' intent as expressed in the written contract. *Id.*; *U.S. Fire Ins. Co. v. Scottsdale Ins. Co.*, 264 S.W.3d 160, 167 (Tex. App. 2008, no pet.).

The Policy does not define the terms "intentional," "misrepresent," or "material" that are used in this provision. Because in making their arguments about voidness under this Policy provision the parties employ the Texas case law set out above concerning misrepresentation as a defense to liability for breach of contract, *see supra* at § V(A), the court interprets these terms in accordance with that case law.

B

As with the prior affirmative defense, to meet its summary judgment burden concerning this defense, Samurai must point the court to the absence of admissible evidence

-28-

to support the defense. *See Celotex Corp.*, 477 U.S. at 325. To defeat Samurai's motion, Landmark must then go beyond its pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *See id.* at 324. To succeed on its own motion for summary judgment, however, Landmark must meet the heavy burden of establishing "beyond peradventure all of the essential elements of the . . . defense." *Bank One. Tex.*, 878 F. Supp. at 962 (quoting *Fontenot*, 780 F.2d at 1194).

Samurai has met its burden to point the court to the absence of supporting evidence. And Landmark has met its corresponding obligation to produce evidence that is sufficient to enable a reasonable jury to find in its favor on this defense. As set out *supra* at § V(B)(1)-(4), Samurai has designated specific facts showing a genuine issue for trial as to each element of this Policy provision: whether Samurai (1) intentionally (2) misrepresented (3) a material fact (4) concerning the covered property or its interest in the covered property. Because there is no statutory notice element pertinent to this defense, Landmark's failure to provide evidence concerning such an element is immaterial for purposes of this defense. As set out *supra* at § V(B)(1)-(4), Samurai's evidence as to at least several elements of the defense is such that a reasonable jury could return a verdict in Samurai's favor, meaning that Landmark has not demonstrated that there are no genuine and material fact disputes as to this issue. Consequently, neither party is entitled to summary judgment concerning this affirmative defense.

VII

Landmark asserts as a defense that Samurai's claims related to the post-tornado vandalism and theft are barred because Samurai failed to satisfy conditions precedent to coverage under the Policy.  Samurai moves for summary judgment on this defense, on which Landmark will bear the burden of proof at trial.

A

"A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation." *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010) (citation omitted).  "[I]f an express condition is not satisfied, then the party whose performance is conditioned is excused from any obligation to perform." *Id.* (citations omitted).

"An insurer has a right to demand notice as a condition to liability under the policy." *Alaniz v. Sirius Int'l Ins. Corp*, 626 Fed. Appx. 73, 77 (5th Cir. 2015) (per curiam) (citation omitted); *see Griggs v. State Farm Lloyds*, 181 F.3d 694, 703 (5th Cir. 1999).

B

Preliminarily, Samurai asserts that Landmark should be precluded from proceeding on this defense because, by the time Samurai filed its summary judgment motion, Landmark had not specifically identified which conditions precedent to coverage allegedly had not been satisfied.

When deciding whether an affirmative defense is an "insufficient defense," the court does not apply the pleading standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  Instead, the court applies the "fair notice" pleading standard for affirmative defenses set forth in *Woodfield v. Bowman*, 193 F.3d 354, 362 (5th Cir. 1999).  *See, e.g.*, *SEC v. Cuban*, 798 F.Supp.2d 783, 795 n.13 (N.D. Tex. 2011) (Fitzwater, C.J.).  To adequately plead an affirmative defense, there must be enough factual particularity to give the plaintiff "fair notice of the nature of the affirmative defense and prevent unfair surprise."  *Mary Kay, Inc. v. Dunlap*, 2012 WL 2358082, at *8 (N.D. Tex. June 21, 2012) (Fitzwater, C.J.) (quoting *Cuban*, 798 F.Supp.2d at 795 n.13). "Although . . . in some instances merely pleading the name of the affirmative defense may be sufficient, a 'fact-specific inquiry' is required to determine whether the pleadings set forth the 'minimum particulars' needed to ensure the plaintiff is not the victim of unfair surprise." *Id.* (quoting *Woodfield*, 193 F.3d at 362).

The court declines to grant summary judgment dismissing Landmark's conditions-precedent affirmative defense solely on the basis that it is not sufficiently pleaded.  Although Landmark did not specify in its answer the exact conditions precedent on which it would base the defense,[14] it did specifically allege that "Samurai Global did not submit a claim to Landmark for theft or vandalism damage until nearly three years after the tornado date of loss," D. Ans. (ECF No. 61) at ¶ 66, in the section of the answer alleging "additional facts and matters relevant to plaintiff's allegations and Landmark[']s defense," *id.* at 4

_____

[14]In its second amended answer, Landmark alleges that "Plaintiff's claims and the damages it seeks are barred because Plaintiff has failed to comply with or satisfy conditions precedent."  D. Ans. (ECF No. 61) at ¶ 84.

(capitalization and bold font omitted).  Furthermore, in several motions and briefs, Landmark confirmed that its conditions-precedent defense could concern Samurai's alleged failure to provide prompt notice of its vandalism and theft insurance claim.

C

As support for its conditions-precedent defense, Landmark points first to a provision in the Policy stating that, in the event of loss or damage, Samurai is required to:

> (2) Give us prompt notice of the loss or damage.  Include a description of the property involved.
> (3) As soon as possible, give us a description of how, when and where the loss or damage occurred.

D. App. (ECF No. 101) at 42-43.  Landmark also points to the Policy language indicating that "[t]he words 'we,' 'us' and 'our' refer to the company providing this insurance"—i.e., Landmark—and providing the mailing address, fax, and email address to which Samurai must direct its notice.  D. App. (ECF No. 101) at 1, 33.  Landmark then cites evidence that, although Samurai provided notice of loss to Landmark's independent adjuster during the July 2020 reinspection of the property and via email on September 1, 2020, it did not submit a formal notice of loss to *Landmark* for its post-tornado vandalism and theft insurance claims until August 3, 2022—nearly three years after the vandalism and theft occurred.

Landmark also points to evidence that, even if Samurai's notice to the adjuster of its losses constitutes notice under the Policy, that notice still was not "prompt," as the Policy requires.  Landmark again cites evidence in the record detailing the dates on which Samurai could be said to have provided notice, and compares those dates to case law indicating that

-32-

"[o]ther courts have found similar and even briefer periods of delay in providing notice to be unreasonable." *Alaniz*, 626 Fed. Appx. at 77.

The Policy language, combined with this evidence, satisfies Landmark's obligation to present admissible evidence that would enable a reasonable jury to find in its favor regarding whether Samurai has complied with the conditions precedent of providing prompt notice of its vandalism and theft insurance claim. Consequently, Samurai is not entitled to summary judgment dismissing Landmark's conditions-precedent affirmative defense.

## VIII

The court now considers Landmark's defense that Samurai failed to mitigate its damages. Samurai moves for summary judgment as to this defense, on which Landmark will bear the burden of proof at trial.[15]

### A

"A plaintiff alleging breach of contract cannot recover damages that could have been avoided by the plaintiff's 'reasonable efforts.'" *Old Republic Gen. Ins. Corp. v. Martin Marietta Materials, Inc.*, 2018 WL 2417851, at *3 (N.D. Tex. May 29, 2018) (Scholer, J.) (quoting *Great Am. Ins. Co. v. N. Austin Mun. Util. Dist. No. 1*, 908 S.W.2d 415, 426 (Tex.

---

[15]In addition to discussing the failure-to-mitigate defense in its response to Samurai's motion, Landmark also addresses this defense in its reply brief in support of its own motion and requests that summary judgment be granted in its favor. Because Landmark did not raise this argument initially in its motion brief, but did so for the first time in its reply brief, the court will not consider Landmark's argument that it is entitled to summary judgment establishing this defense. *See, e.g.*, *Jacobs v. Tapscott*, 2006 WL 2728827, at *7 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.) (holding that the court will not consider an argument raised for the first time in a reply brief), *aff'd*, 277 Fed. Appx. 483 (5th Cir. 2008).

1995)).  When a party "can save [it]self from the damages resulting from its breach at a

trifling expense or with reasonable exertions, it is [its] duty to incur such expense and make

such exertions." *Great Am. Ins. Co.*, 908 S.W.2d at 426 (quoting *Walker v. Salt Flat Water

Co.*, 96 S.W.2d 231, 232 (Tex. 1936)).  "A party raising such a failure-to-mitigate defense

must prove (1) the other party could have mitigated its damages but failed to do so due to a

lack of diligence; and (2) the amount by which the damages were increased as a result of [the

other party's] failure to mitigate." *Bexar Cnty. Hosp. Dist. v. Schindler Elevator Corp.*, 2020

WL 4720091, at *2 (W.D. Tex. June 8, 2020) (citing *Great Am. Ins. Co.*, 908 S.W.2d at 426;

*Kartsotis v. Bloch*, 503 S.W.3d 506, 522 (Tex. App. 2016, pet. denied)).

B

Samurai contends that Landmark has no evidence that Samurai failed to mitigate

damages in the wake of the tornado loss.  Samurai asserts that, to the contrary, Landmark

conceded that "mitigation efforts were observed during the initial inspection" of the property

directly after the tornado.  P. Br. (ECF No. 90) at 9 (quoting ECF No. 66, at ¶ 63).  Samurai

maintains that it actually "went above and beyond what is required in an effort to mitigate

additional damage after the tornado loss," taking actions such as "boarding up windows and

doors, tarping roofs, installing perimeter fencing, and even hiring security."  *Id.* at 10.

Samurai contends that the only reason it ceased expending more money on mitigation efforts

was because of the "lack of insurance payment" from Landmark.  *Id.* at 11; P. App. (ECF No.

91) at 34.

Landmark, on the other hand, cites deposition testimony from Samurai's expert, who

testified that the post-tornado vandalism, theft, and moisture damage was attributable to Samurai's failure to properly secure the property and to timely mitigate the tornado damage, and that the additional damage largely could have been prevented had Samurai implemented better security and moisture mitigation measures directly after the tornado.  In particular, Landmark notes, this expert testified that there were missing boards on doors and windows, whether due to vandalism or having never been boarded up at all; improperly installed and improperly maintained tarps; and no security guards present.  Landmark also proffers the opinion of its own expert, who opined that the additional post-tornado damage was "due to theft and environmental exposure, collectively a failure to mitigate the October 20, 2019 tornado damage."  D. App. (ECF No. 101) at 1486.  Landmark also cites evidence that Samurai received over $2 million in payments from Landmark and yet never attempted to repair the property.  Landmark also relies on evidence that indicates the amount it paid out to Samurai immediately after the tornado, as well as the additional amount Samurai requested in the period after the tornado—figures that could show the amount by which the damages were increased due to any failure by Samurai to mitigate damages.

Landmark has met its burden of showing a genuine issue for trial on its failure-to-mitigate-damages defense, because it has pointed to admissible evidence that is part of the summary judgment record and could enable a reasonable jury to find in its favor as to both elements of the defense.  Samurai therefore is not entitled to summary judgment dismissing this defense.

IX

Landmark also asserts an unjust enrichment defense.  Samurai moves for summary judgment as to this defense, on which Landmark will bear the burden of proof at trial.

A

"Under Texas law, 'a party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage.'"  *Unum Life Ins. Co. of Am. v. Munoz*, 2007 WL 628084, at *4 (N.D. Tex. Feb. 27, 2007) (Fish, C.J.) (quoting *Elliott's Hallmark Travel, Inc. v. Laker Airways, Inc.*, 2000 WL 256893, at *2 (N.D. Tex. Mar. 6, 2000) (Fish, J.)).  "Generally, a plaintiff may not recover under a theory of unjust enrichment when a valid contract covers the dispute."  *Id.* "However, . . . in some circumstances, a claim for unjust enrichment may be had where overpayment was made under a valid contract."  *Id.* (citing *Sw. Elec. Power Co. v. Burlington N. R.R. Co.*, 966 S.W.2d 467, 469 (Tex. 1998); *Walsh v. Am.'s Tele-Network Corp.*, 195 F.Supp.2d 840, 851 (E.D. Tex. 2002)).

B

Landmark contends that granting Samurai the relief it requests would unjustly enrich Samurai because "[Samurai] has already been overpaid for any pecuniary loss associated with the nine units at the Property that it owned."  D. Br. (ECF No. 100) at 24.  Samurai, in turn, maintains that the unjust enrichment doctrine does not apply.  But as discussed *supra* at § III(B), there is a genuine issue of material fact as to whether Samurai had an insurable interest in all forty-two units on the property, such that a jury could find that Samurai is

entitled to an additional payout from Landmark under the Policy.  And Landmark points to evidence indicating that, if Samurai had an insurable interest in only the nine owned units, the amount it has already paid out to Samurai for its tornado and post-tornado losses is more than adequate.  Landmark therefore has met its burden of showing a genuine issue for trial, thereby precluding Samurai from obtaining summary judgment on this defense.

## X

The court turns next to Landmark's proportionate fault defense to Samurai's Texas Insurance Code claims.  Samurai moves for summary judgment as to this defense, on which Landmark will bear the burden of proof at trial.

## A

The Texas Civil Practice and Remedies Code provides that a claimant in "any cause of action based on tort" "may not recover damages if [its] percentage of responsibility is greater than 50 percent."  Tex. Civ. Prac. & Rem. Code Ann. §§ 33.001, 33.002(a)(1) (West 2023).  "Actions 'based on tort,' as interpreted by Texas courts, include 'statutory tort claims that do not include a separate and conflicting legislative fault allocation scheme.'"  *Lexington Ins. Co. v. N. Am. Interpipe, Inc.*, 2011 WL 178654, at *3 (S.D. Tex. Jan. 19, 2011) (quoting *Werner v. KPMG LLP*, 415 F.Supp.2d 688, 703 (S.D. Tex. 2006) (Rosenthal, J.)).  Because "[e]xtra-contractual claims under the Texas Insurance Code . . . are often recognized as statutory tort claims," and because "the Insurance Code contains no fault allocation scheme," courts have held that this proportionate fault provision applies to claims under the Texas Insurance Code.  *Id.*; *see Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460

(5th Cir. 1997); *Sw. Bank v. Info. Support Concepts, Inc.*, 149 S.W.3d 104, 111 (Tex. 2004).

### B

Relying on the faulty premise that proportionate fault is typically only available in negligence actions, Samurai maintains that this defense does not apply in this case. But as the court has just explained, the proportionate fault provision does apply to claims under the Texas Insurance Code. And as discussed *supra* at § IV, Landmark has proffered evidence showing that there is a genuine dispute of material fact as to at least one element of its Texas Insurance Code claims. Furthermore, proportionate fault is a classic jury question in insurance cases. *See* Tex. Pattern Jury Charges: Bus., Consumer, Ins. & Emp. 115.36 (2022). Consequently, Samurai is not entitled to summary judgment as to this defense, and the court denies Samurai's motion in this respect.

### XI

Finally, Samurai moves for summary judgment as to Landmark's counterclaim for rescission based on Samurai's alleged misrepresentations, on which Landmark will bear the burden of proof at trial.

### A

A contract is subject to avoidance by a party on the ground that the other party engaged in misrepresentations in connection with the contract. *See Citizens Standard Life Ins. Co. v. Muncy*, 518 S.W.2d 391, 394-95 (Tex. App. 1974, no writ). "To be entitled to rescission, a party must show that (1) [it] and the defrauding party are in the status quo (*i.e.*, there are no retained benefits received under the instrument and not restored to the other

party) or (2) there are equitable considerations that obviate the need for the status quo relationship." *Isaacs v. Bishop*, 249 S.W.3d 100, 110 (Tex. App. 2008, pet. denied) (citation omitted). "An inability to return the parties to their former position should be considered in determining whether rescission would be equitable." *Id.* (citation omitted). And as stated above, Texas courts recognize that "[s]tatutory notice is an essential element of a defense based on misrepresentation or rescission." *Myers*, 2008 WL 1758640, at *3 (citing *Womack*, 296 S.W.2d at 235-36; *Koral Indus.*, 788 S.W.2d at 148).

"Because rescission is a remedy, it is available only if the other party to the contract has committed some wrong." *Kennebrew v. Harris*, 425 S.W.3d 588, 595 (Tex. App. 2014, pet. denied) (citation omitted). "Thus, for rescission to be appropriate, the party requesting it must first prevail on a claim for which rescission is an available remedy." *Id.* at 596.

B

Landmark contends that it is entitled to rescission of the Policy on account of Samurai's alleged misrepresentations concerning the legal structure of the property, its ownership interest in the property, and its alleged damages. Because resolving this rescission counterclaim involves determining whether Samurai committed a wrong, this claim must be resolved at trial. The court therefore denies Samurai's motion as to this counterclaim.

XII

In summary, the court grants Landmark's motion as to (1) the issue whether Samurai may prove its breach of contract claim based on Landmark's failure to provide "ordinance or law" coverage, and (2) the issue whether Samurai may prove its breach of contract claim

-39-

based on Landmark's failure to provide replacement cost coverage, and the court otherwise denies Landmark's motion.  The court grants Samurai's motion as to Landmark's affirmative defense that it can avoid liability on Samurai's claims on account of Samurai's alleged misrepresentations.  The court otherwise denies Samurai's motion.

*   *   *

For the reasons explained, the court grants Landmark's motion for summary judgment in part and denies it in part, and grants Samurai's motion for partial summary judgment in part and denies it in part.

**SO ORDERED**.

April 26, 2024.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE